ROBERT' L. BLAND, Junc.n.
In my opinion the Court of Claims cannot make an award on the sole ground of sympathy, however strong the appeal may be. It is without power to recommend to the Legislature an appropriation of the public revenues as a gratuity. The rule of equity and good conscience cannot be invoked for such purpose.
Bobby Cogar, fourteen years of age, on whose behalf a petition is filed in this case by his duly appointed and acting guardian, seeking an award of $10,000.00 as compensation to his said ward for personal injuries sustained while he was an inmate of the West Virginia children’s home at Elkins, is the son of Mr. and Mrs. Ellery Cogar, late residents of Webster county, and both now deceased. The father of said infant was a veteran of World War I. By virtue of that fact his children and dependents became entitled to an allowance of funds from and at the hands of the veterans’ administration, West Virginia facility. On the death of both the father and mother of said ward, the duty rested upon said facility to pay said money to the dependents of said deceased veteran, including petitioner’s *100 ward. At the time of the appointment of petitioner as guardian for said infant son of said deceased veteran, his ward was in charge of the department of public assistance, children’s division, of West Virginia, and was being kept and cared for in the home of Al Lanham, of Camden-on-Gauley, West Virginia. The appointment of petitioner as guardian for said infant was made at the instance of the Veterans’ Administration. The department of public assistance subsequently caused the boy to be removed to the children’s home at Elkins. He was removed to that institution in September, 1943. The boy was required to attend the school taught at the home and did minor chores from time to time. The twenty-eighth day of December, 1943, was observed as a holiday. On that date petitioner’s ward effected an entrance to the basement of a building through which he made his way to the laundry. The laundry work had just been concluded by Mrs. Hazel Collett, the laundress at the institution. She had momentarily left the laundry. Only a young female inmate was present when the boy made his appearance. The current of a drying machine, known as a “spinner” had been turned off. The spinner, however, continued in motion for a short time thereafter. The boy walked to this spinner and deliberately thrust his hand into it. The top had not at the moment been replaced when the current was shut off. He gave as a reason for his action that he saw a nut in the machine and wanted to see what it looked like. He further added "Well, I was fooling around the furnace and I just went in there and I was fooling around and went in there and stuck my hand in the thing.” As a result of his inquisitiveness his arm was severed and dropped into the spinner. He was given first aid by the superintendent of the institution and his wife, and immediately conveyed to the Davis Memorial hospital where his right arm was amputated close to the socket. There can be no doubt that the child was badly and seriously injured. His case is one that makes an exceedingly strong appeal to the sympathy of the court. The claim is prosecuted solely on the alleged ground of the negligence of the officers and agents of the institution. The claim is advanced that the machine was a dangerous instrumentality and that the duty rested upon *101 those in charge of it to protect the inmates from accident and harm. The state resists an award in the case. It is shown by the testimony of Mrs. Collett, the laundress, that children were warned against danger and forbidden to go to the laundry except when they were sent for the purpose of bathing and carrying laundry. On the day of the accident the boy had no occasion to be in the laundry. He effected entrance clandestinely and the accident occurred immediately after he entered the room and while the laundress was absent for approximately five minutes on an essential mission. There is no evidence in the case on which majority members can see their way clear to recommend relief for the child. To say, under the facts disclosed by the record, that the officials, agents and servants of the institution were negligent in the premises would be a violent assumption. I am impressed by the fact that all ordinary precautions against danger to the child, as well as to other inmates of the institution, were employed. The machine is not shown to be an inherently dangerous instrumentality. I do not believe that an appropriation of the public revenues of the state would be proper under the circumstances disclosed by the evidence in this case. Such an appropriation would amount to nothing more than the bestowal of a gratuity, and it would establish an unfortunate precedent. The public revenues cannot properly be appropriated for private purposes. An appropriation to compensate petitioner’s ward would, I think, be for a private purpose. An award is therefore denied and the claim dismissed.